FILED IN CHAMBERS
U.S.D.C ATLANTA

Date: Nov 24 2025

KEVIN P. WEIMER , Clerk

By: s/ Neethu Varghese

Deputy Clerk

# United States District Court

NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA

v.

Steven Estrada Feregrino

**CRIMINAL COMPLAINT**

Case Number:  3:25-MJ-0009

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief.  Beginning on a date unknown but at least by January 9, 2024 and continuing to the present in Fayette County, in the Northern District of Georgia, defendant(s) did, commit the offense of false statements to a federal firearms licensee, smuggling goods from the United States, and conspiracy to commit the same,  in violation of Title 18, United States Code, Sections 922(a)(6), 554, and 371.

I further state that I am a(n) Special Agent and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.    Yes

*Zachary S. Howard*

Signature of Complainant

Zachary S. Howard

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to me by telephone pursuant to Federal Rule of Criminal Procedure 4.1.

November 24, 2025

Date

at    Atlanta, Georgia

City and State

J.ELIZABETH MCBATH
UNITED STATES MAGISTRATE JUDGE

Name and Title of Judicial Officer

AUSA Noah R. Schechtman / noah.schechtman@usdoj.gov

Signature of Judicial Officer

ATTEST: A TRUE COPY
CERTIFIED THIS

Date: Nov 24 2025

KEVIN P. WEIMER, Clerk

By: s/ Neethu Varghese

Deputy Clerk

<u>AFFIDAVIT IN SUPPORT OF COMPLAINT AND WARRANT</u>

1. I, Zachary S. Howard, Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), depose and say under penalty of perjury that the following is true and correct to the best of my knowledge and belief:

PURPOSE

2. I make this affidavit in support of an Application for a Criminal Complaint and Arrest Warrant for Steven ESTRADA FEREGRINO ("ESTRADA") because probable cause exists to believe that ESTRADA violated 18 U.S.C. §§ 371 (conspiracy to commit a crime), 554 (smuggling), and 922(a)(6) (false statement to a federal firearms licensee) in the Northern District of Georgia.

**AGENT BACKGROUND**

3. . I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am presently employed as a Special Agent with the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), where I have worked since January 14th, 2024.  I am presently assigned to Atlanta Group I of the ATF's Atlanta Field Division, which is a criminal enforcement group that specializes in firearms trafficking investigations. In that capacity, my duties include investigating federal criminal offenses in the Northern District of Georgia.

4. During my tenure as a Special Agent, I completed approximately 480 hours (12 weeks) of instruction at the Federal Law Enforcement Training Center in Glynco, Georgia (FLETC) as part of the Criminal Investigator Training Program (CITP). CITP provides fundamental training in the techniques, concepts, and

methodologies of conducting criminal investigations. Some of the subjects covered in include training in firearms, physical techniques, driving techniques, handcuffing, interviewing, surveillance, crime scene management, photography, basic firearms training, and federal court procedures. Upon graduation from CITP, I attended and completed approximately 600 hours (15 weeks) of instruction at the ATF's Special Agent Basic Training Program (SABT). SABT provides fundamental training in the techniques, concepts, and methodologies of conducting criminal investigations specific to ATF. Some of the subjects covered in SABT include training in investigations related to firearms and firearms trafficking, arson, explosives, narcotics, gangs and criminal groups, use of confidential informants and undercover officers in investigations, physical techniques, interviewing, electronic, physical, and mobile surveillance, crime scene management, basic firearms training, and federal court procedures. During my training, I completed blocks of instruction and labs that have enabled me to identify potential sources of electronic evidence, including but not limited to computers, cell phones, and other digital storage media and to preserve and exploit such evidence. Additionally, I have consulted with law enforcement officers and other professionals who specialize in identifying, collecting, and preserving electronic evidence.

5. During my tenure as an ATF Agent, I have also gained experience in debriefing defendants, co-conspirators, witnesses, and informants that have been involved in the trafficking of firearms. During these debriefings, numerous defendants have advised that they utilized straw purchasers to obtain firearms and ammunition for transfer/sale to prohibited persons, state and foreign markets

in which it is unlawful or more difficult to obtain firearms, or to facilitate other criminal conduct.

6. Based on my training and experience, I know that persons involved in making straw purchases of firearms in furtherance of unlawful dealing in firearms or firearms trafficking make repetitive purchases of the same types of firearms.

7. I have personally conducted and/or assisted in investigations of criminal acts involving violations of Title 18, United States Code, Section 371 (conspiracy to commit a crime); 554 (smuggling) and 922(a)(6) (false statement to a federal firearms licensee). Through my participation in these investigations I have become familiar with the practices, patterns, and techniques common to firearms traffickers.

8. Prior to my tenure as a Special Agent, from 2019-2024, I was an Assistant United States Attorney (AUSA) and Special Assistant United States Attorney (SAUSA) in the U.S. Attorney's Office for the Northern District of Georgia. During my time as an AUSA and SAUSA I was a federal criminal prosecutor focusing primarily on large scale narcotics and firearms crimes. From 2016-2019, I was the Deputy Director of Legal Services and Legal Services Officer for the Georgia Department of Public Safety (GDPS). During my tenure with GDPS, I provided legal and policy services and training to members of the Georgia State Patrol, Georgia Motor Carrier Compliance Division, and Georgia Capitol Police. From 2013-2016, I was an Associate Attorney employed by Oliver Maner LLP in Savannah, Georgia. During my time with Oliver Maner, I represented law enforcement officers and entities and other municipal and county employees and entities in state and federal court litigation relating to, among other things, claims

of false arrest, false imprisonment, excessive use of force, violations of 42 U.S.C. § 1983, and violations of state and federal constitutional rights. From 2012-2013, I was a Police Officer and then Senior Police Officer with the Gwinnett County Police Department (GCPD). During my tenure with GCPD I was a patrol officer assigned to the Central Precinct. Among other things, I responded to calls for service, investigated criminal violations of law, made arrests, and issued traffic citations. I am a cum laude graduate of the University of Georgia School of Law and a graduate with highest honors from the Georgia Institute of Technology's College of Management.

## SOURCES OF INFORMATION

9. I make this affidavit based upon personal knowledge derived from my participation in this investigation, including information I have learned from discussions with Special Agents and other law enforcement officers, witness interviews, corporate records, and other related documents.

10. I have endeavored to make clear which facts stated in this affidavit are based upon my own personal observations and which are not. Unless otherwise noted, factual statements not based upon my personal observations are based upon information received from one or more law enforcement officers who may have either direct or hearsay knowledge of the factual statement, such knowledge having been conveyed to me either personally or through a report that I have reviewed. Wherever in this affidavit I state my belief, such belief is based upon my training and experience and upon the information obtained through this investigation.

11. The facts relayed in this affidavit do not reflect the totality of information known to me or other agents and officers, but instead are merely the facts necessary to establish probable cause. I do not rely upon facts not set forth herein in reaching my conclusion that a warrant should be issued, nor do I request that this Court rely upon any facts not set forth herein in reviewing this affidavit in support of the application for a warrant.

## PROBABLE CAUSE

### *Recovery of firearms in Del Rio, Texas*

12. On August 14, 2025, Customs and Border Protection (CBP) Officers located and seized approximately nine firearms at the Del Rio, Texas, Port of Entry. The Del Rio, Texas, Port of Entry connects the United States of America and Mexico. CBP officers at that location were conducting outbound operations when they seized approximately nine firearms from a 1998 Ford Econoline E350 Super Duty Van bearing Georgia (GA) plate YJC533 and a 2019 Carry on Trailer 6x18 GWHS2BRK Series that was traveling to Mexico.

13. The van was driven by Norma MANCILLA-ALMARAZ and Juana BELMARES-NUNEZ occupied the passenger seat. Both MANCILLA-ALMARAZ and BELMARES-NUNEZ gave a negative declaration for weapons, ammunition, or monetary instruments over $10,000. CBP selected the van for secondary inspection. During the secondary inspection, CBP officers located nine pistols and fifteen magazines which were wrapped in aluminum and concealed in two separate packages in the rear cargo area of the van.

14. During the investigation, SAs with Homeland Security Investigations (HSI) interviewed MANCILLA-ALMARAZ who explained that two (2)

Page 5 of 10

unknown men came to him/her residence (629 Carlton Rd, Palmetto, GA 30268) on August 10, 2025, and delivered the two packages that MANCILLA-ALMARAZ was attempting to transport over the border into Mexico. MANCILLA-ALMARAZ explained to agents that he/she works transporting packages from the United States into various parts of Mexico three to four times a year, but her transport business did not have a specific company name.

15. The serial numbers of the nine seized firearms were submitted to the ATF San Antionio office for tracing.

### Straw Purchase at Autrey's Armory

16. Seven of the seized firearms were traced back to a single purchaser, Purchaser One. All of these firearms were purchased in the Northern District of Georgia at Autrey's Armoy in Fayetteville, Georgia, and have a time to crime of approximately six days. The other two firearms were traced back to a different original purchaser with a time to crime of approximately 1,065 days.

17. All seven firearms Purchaser One purchased are pistols and through investigative training involving firearms being trafficked into Mexico, I know these types of firearms are highly sought-after in Mexico.

18. When Purchaser One purchased the seven pistols at Autrey's Armory, an FFL in the Northern District of Georgia, located at 116 Bethea Road Suite 112 Fayetteville, GA 30214, he/she completed ATF Form 4473s.[1] On ATF Form 4473,

---

[1] Based on my training and experience, I know that when an individual goes to an FFL to purchase a firearm, he or she is required to complete the ATF Form 4473 before making a purchase. The purpose of the ATF Form 4473 is to determine whether the prospective buyer is lawfully able to possess a firearm and to ensure that the prospective buyer is purchasing the firearm only for him or herself. To complete the ATF Form 4473, the individual must answer a series of "yes/no" questions and then sign and date the form certifying that the information provided is accurate.

Purchaser One checked "yes" in box 21(a) which asks the customer: "Are you the actual transferee/buyer of all of the firearm(s) listed on this form and any continuation sheet(s) (ATF Form 5300.9A)?"

19. On September 25, 2025, ATF SA Hunter Worley went to Autrey's Armory to review the video surveillance footage from Purchaser One's August 8, 2025, purchase of seven firearms that were seized in Del Rio, Texas. SA Worley met with the store manager, who advised that they were the individual who sold the firearms to Purchaser One. While at Autrey's Armory, SA Worley reviewed the video surveillance footage with the store manager.

20. The video surveillance footage showed that, on August 8, 2025, at approximately 1858 hours, Purchaser One arrived at Autrey's Armory in a Ford truck. Purchaser One was accompanied by a young child and two adult males. The two adult males exited the vehicle from the front passenger seat and the driver's seat. Both adult males entered the store with Purchaser One during the purchase of the firearms. The two adult males remained in the store for the duration of Purchaser One's purchase.

21. The store manager then advised SA Worley that they were familiar with one of the males (a taller adult male wearing a white t-shirt) that drove Purchaser One to Autrey's Armory. The store manager identified the individual as Steven ESTRADA FEREGRINO. The store manager then advised that ESTRADA FEREGRINO frequents Autrey's Armory and has made numerous purchases of firearms from the FFL. The store manager also advised that an unknown individual (later identified as ESTRADA) had called the owner, Michael

BEDFORD,[2] prior to the straw purchase occurring and selected the specific firearms that were purchased by Purchaser One. The store manager stated they were also told by the owner that a woman/man would be coming to pick up the firearms and to have the requested firearms set aside ready to be picked up.

22. Agents later interviewed Purchaser One (discussed more fully below) and he/she stated he/she never spoke to anyone at Autrey's Armory prior to purchasing the firearms on August 8, 2025. Agents also obtained Purchaser One's historical call records and confirmed he/she did not contact Autrey's Armoy or BEDFORD on August 8, 2025, or any other time. Agents thus concluded that someone other than Purchaser One contacted BEDFORD and selected firearms for Purchaser One to purchase.

23. Based on my training and experience, I am familiar with the technique of utilizing a third party to call an FFL to facilitate a straw purchase as one that is often used by firearms traffickers in cases involving transnational criminal organization which smuggle firearms to Mexico.

24. Sole responsible parties of FFL's, such as BEDFORD, received education from an ATF Industry Operations Investigator (IOI) as to what a straw purchase is and how to identify a straw purchaser while applying for their license. The IOI will fully explain the laws and regulations that pertain to a straw purchase along with walking through different straw purchase situations. The applicant will then initial that they understand the training on straw purchasing. BEDFORD initialed the straw purchasing training during the licensing process.

---

[2] Michael BEDFORD is the sole responsible person listed on the Federal Firearms License (FFL) of Autrey's Armory. ATF issued the FFL to BEDFORD on March 15, 2023.

25. Based on this information, Autrey's Armory provided ATF with all ATF Form 4473s related to ESTRADA FEREGRINO. After reviewing the documents, agents learned ESTRADA FEREGRINO has purchased approximately nineteen firearms from Autrey's Armory since his first purchase on January 9, 2024. At the top of the multiple forms ESTRADA FEREGRINO filled out, he provided the FFL with telephone number 770-688-6784. ESTRADA FEREGRINO's most recent purchase from Autrey's Armory occurred on June 19, 2025, where he also provided 770-688-6784 as his contact number on the top of ATF Form 4473.

*Interview of* Purchaser One

26. On October 8, 2025, at approximately 8:55AM, agents interviewed Purchaser One.

27. During the interview, Purchaser One stated he/she reached out to an acquaintance that goes by the nickname "Kilo" looking for a way to make some money. Purchaser One said he/she lost his/her job in July and was in financial hardship at the time. On August 8, 2025, "Kilo" got him/her connected with an individual Purchaser One only knew as "Shooter" – later identified as Vincent GRIFFIN – who coordinated Purchaser One's purchase of firearms at Autrey's Armory. Purchaser One contacted "Shooter" and was then picked up by the gray Ford truck that drove him/her to the Autrey's Armory to complete the purchase.

28. Purchaser One was shown a screenshot of the two (2) adult males that entered the FFL with him/her. Purchaser One described the two (2) males as "Mexicans" and stated that they spoke to each other in Spanish the majority of the time he/she was with them. However, Purchaser One told agents that the taller male wearing a white t-shirt (ESTRADA FEREGRINO) provided the

approximately $4600 in United States currency for the purchase of the firearms. After the completion of the purchase, the firearms were carried out by ESTRADA FEREGRINO and the unknown male to the gray Ford truck. Purchaser One advised that ESTRADA FEREGRINO drove him/her back to his/her residence and that was the last time he/she saw the seven firearms he/she purchased on August 8, 2025.

29. On November 6, 2025, Purchaser One told agents that GRIFFIN had recently contacted him/her to see if he/she had spoken to anyone, including the police, about the August 8, 2025, firearms purchase. GRIFFIN also asked Purchaser One if he/she would be interested in doing another deal.

## CONCLUSION

30. Based on the foregoing I respectfully request that the Court issue a Criminal Complaint and Arrest Warrant for ESTRADA for violating 18 U.S.C. §§ 371 (conspiracy to commit a crime), 554 (smuggling)and 922(a)(6) (false statement to a federal firearms licensee) beginning on a date and unknown but at least as early as January 9, 2024, and continuing through the present.

## END OF AFFIDAVIT